NO. 07-10-0247-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 20, 2011

_____

MIKE LEACH,

Appellant

v.

TEXAS TECH UNIVERSITY,

Appellee

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2009-550,359; HON. WILLIAM SOWDER, PRESIDING

_____

*Opinion*

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

> *All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit. The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think expedient.* [1]

---

[1] Tex. Const. art. I, §2.

The issues before us today implicate the above quoted section of our state constitution. We have been asked to determine whether the common law doctrine of sovereign immunity barred the suit of Mike Leach against Texas Tech University (the University), its Chancellor Kent Hance, its regents Jerry Turner and Larry Anders, its president Guy Bailey, its athletic director Gerald Myers, and its employee/attorney Charlotte Bingham. Applying the doctrine via a plea to the court's jurisdiction, the trial court dismissed all but one cause of action averred by Leach. The one remaining encompassed the allegation of breached contract. The trial court refused to dismiss it because the University "by and through its conduct . . . waived [its] immunity from suit ...." We affirm in part, reverse in part, and render in part the trial court's order.

### *Standard of Review*

Who did what to whom and why is not something this court will decide. Nor do we address the veracity of any of the many accusations levied by the parties against each other and third parties. That is not within our authority when addressing whether a trial court acted properly in granting a plea to its jurisdiction. This is so because such a plea focuses upon the trial court's authority to eventually adjudicate the dispute on its merits; it is not itself an adjudication on the merits.

Next, a plea to the trial court's jurisdiction likens to a motion for summary judgment. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). So, the jurist considering it is obligated to 1) interpret the pleadings in a light most favorable to the party attempting to sustain the court's jurisdiction, *i.e.* Leach, 2) accept as true all evidence favorable to that party, and 3) indulge in every reasonable inference

arising from the evidence and favorable to him. *Id.; accord City of Elsa v. Gonzalez*, 325 S.W.3d 622, __ (Tex. 2010).

### *A Simplistic Review of History*

Given the nature of the issues at bar, it is helpful to delve into the history underlying the doctrine of sovereign immunity. The latter found its genesis in old England. Then, as most will admit, the king (or queen as the case may be) was omnipotent. No inherent authority belonged to those over whom he lorded. *Kemper v. State*, 138 S.W. 1025, 1043 (Tex. Crim App. 1911), *overruled on other grounds by Robertson v. State,* 142 S.W. 533 (Tex. Crim. App. 1911). Rather, any rights or privileges they enjoyed were no greater than those the monarch deigned to bestow on them. Moreover, the judiciary that he created not only recognized this relationship between the king and his people but also deduced from it that since the former was sovereign over all, the latter could not be sue him without his approval. Thus, the tenet was of neither legislative nor executive origin. Instead, judges simply declared it to be law.[2] *Tex. A&M University-Kingsville v. Lawson*, 87 S.W.3d 518, 520 (Tex. 2002) (stating that "the bar of sovereign immunity is a creature of the common law and not of any legislative enactment").

With the discovery and population of the New World, our forefathers were called upon to establish their own system of government. Having rebelled against the tyranny of British rule, one would think that they would instill a government of limited powers. Indeed, the constitutional passage written above purports to encapsulate that sentiment. Nonetheless, not all things British were rejected for our own courts adopted much of the common law developed overseas. And, included in that body of law was the doctrine of

---

[2]Dare we infer that this was an early example of judicial activism?

3

sovereign immunity. *See Harris County Hosp. Dist. v. Tomball Regional Hosp.,* 283

S.W.3d 838, 844 (Tex. 2009) (recognizing sovereign immunity as part of the common

law). So, though we have no king and despite the words of article 1, §2 of our Texas

Constitution, the government (*e.g.,* State, county, and municipalities) and those working

for it in their official capacities came to enjoy that created to protect monarchs so many

years ago.[3]

### The Law of Sovereign Immunity

We wish not to mislead. It is clear that sovereign immunity is alive and well in

Texas. As it now exists, it provides a double shield to the entities it protects. They are

insulated from both liability and suit. *Tex. A&M University-Kingsville v. Lawson*, 87

S.W.3d at 520-21; *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997).

That is, one can neither sue for payment nor compel payment from the State without

legislative consent. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d at 405. Given this

double shield, defeating one still meant the other stood. Take, for instance, the subject of

contracts. In Texas, when the State executes such an obligation it loses its immunity

from liability. *Id.* at 405-06. Yet, it remains protected from being forced into litigation via

suit. *Id.* So, while it must perform and, like any other party to a contract, is responsible

for its failure to do so, it cannot be sued for damages without its permission if it opts to

forego performance. In other situations, the converse is also true; the State may grant

---

[3]Some may think it ironic that sovereign immunity remains viable given the wording of our Texas Constitution. Again, it mandates that "[a]ll political power is inherent *in the people*, and all free governments are founded on *their* authority, and instituted for *their* benefit." TEX. CONST. art. I, §2 (emphasis added). Thus, true sovereignty lies in the people of Texas, not the government they created. *Kemper v. State*, 138 S.W. 1025, 1043 (Tex. Crim. App. 1911) (stating that "[t]he rule in America is that the American people are the sovereigns, and in them is lodged all power, and the agencies of government possess no authority save that which is delegated to them by the people in the written compact . . . which is styled the 'Constitution' . . . ."). That the true sovereign may be subjected to suit without consent while their creation cannot seems to diminish the meaning of art. I, §2 of the Constitution.

someone permission to sue it but retain its insulation from being forced to pay. *Id.*; *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivision Prop./Cas. Joint Self-Insurance Fund*, 212 S.W.3d 320, 323-24 (Tex. 2006) (explaining the nature of the immunity). The logic behind that circumstance is not ours to debate for that is the law as declared by our Supreme Court.

That sovereign immunity extends to state universities is similarly clear. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivision Prop./Cas. Ins. Joint Self-Insurance Fund*, 212 S.W.3d at 324. Of less clarity, however, is the manner by which a university or the State, for that matter, waives immunity.

Admittedly, our Supreme Court has declared that it has "consistently deferred to the Legislature" to effectuate waiver. *Id.* at 326, *quoting Tex. Natural Res. Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002). That is, we have been told that only the legislature can remove the insulation. *Id.* This purportedly is so because that body "is better suited . . . to weigh conflicting public policies associated with waiving immunity and subjecting the government to increased liability, the burden of which the public must bear." *Id.* Moreover, the legislature accepted the onus of determining when to lower the shield, as exemplified by statutes such as the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE ANN. §101.021 (Vernon 2005) (stating when governmental entities may be sued for torts committed by their employees). Legislative writings with that effect, though, tend to be the exception, not the rule. And, that the legislature intends to keep waiver as the exception is borne out by §311.034 of the Texas Government Code. Via the provision, our representatives declared that "a statute shall not be construed as a waiver… unless the waiver is effected by clear and unambiguous language." TEX. GOV'T

5

CODE ANN. §311.034 (Vernon Supp. 2010). What this means, then, is that unless the words of a statute controlling a particular dispute between the government and its wards clearly and unambiguously specify that one or both aspects of immunity are removed, the governmental entity continues to enjoy its judicially created insulation against paying damages. *See City of El Paso v. Heinrich,* 284 S.W.3d 366, 368-69 (Tex. 2009) (holding that sovereign immunity protects an entity from suit for monetary, as opposed to equitable, relief).

Reading §311.034 of the Government Code and our Supreme Court's utterances about deferring to the legislature would seem to belie our prior observation that the manner of waiving immunity falls short of clear. But, they do not; instances continue to arise supporting our observation. For example, in *Tex. A&M University-Kingsville v. Lawson*, the Supreme Court had before it a factual scenario involving the university's refusal to abide by a settlement agreement. The latter encompassed the resolution of a whistleblower claim. And, though the legislature waived its immunity from suits founded upon such claims per §554.0035 of the Texas Government Code, *Tex. A&M University-Kingsville v. Lawson*, 87 S.W.3d at 521 (so stating), it said nothing about the waiver encompassing agreements settling those suits. *Id.* Neither that omission nor the prior comments about deferring to the legislature dissuaded a majority of the Texas Supreme Court, though, from concluding that Lawson was not barred by sovereign immunity from suing Texas A&M for breaching the settlement. *Id.* at 522-24.

Another opinion of the Supreme Court also tending to muddy the waters is *Federal Sign v. Texas Southern University.* There, a majority of justices first said that the

6

decision to abrogate immunity lay with the ". . . Legislature's sole province . . . . " *Federal Sign v. Texas S. Univ.*, 951 S.W.2d at 409. Then, that same majority wrote:

> We hasten to observe that neither this case nor the ones on which it relies should be read too broadly. We do not attempt to decide this issue in any other circumstances other than the one before us today. There may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts.

*Id.* at 408 n.1. Justice Hecht echoed that cautionary statement in a concurring opinion. Joined by Chief Justice Phillips and Justices Cornyn and Owen, he said that "[c]ategorical statements in the Court's opinion must be read in this context." *Id.* at 413. He then mentioned various "hypotheticals" wherein ". . . the State may waive immunity by conduct . . . so that it is not always immune from contract suits." *Id.* Such observations hardly comport with the idea that only the legislature can decide when, where, and how to waive sovereign immunity.

In reading *Federal Sign*, *Texas A&M,* and §311.034 of the Government Code, we are left feeling somewhat like a dog chasing quarry that only runs in circles. We strive to reach the designated end only to find ourselves back at the beginning. Nevertheless, from the foregoing precedent generalities can be garnered. If one invokes a statute as basis for defeating immunity, that statute must clearly and unambiguously abrogate the shield. TEX. GOV'T CODE ANN. §311.034 (Vernon Supp. 2010). On the other hand, if the purported waiver is founded upon non-statutory grounds, then we must search precedent to determine whether the factual situation has already been addressed by the Supreme Court. *E.g., Federal Sign v. Texas S. Univ.*, *supra* (wherein the court clearly held that executing a contract waives immunity from liability). If that court has not, then we defer to the legislature's general authority to act on the matter, except when the circumstances

7

compel the judiciary to intervene, if ever.   With that said, we turn to the issues posed to us by the parties.

### *Application of Sovereign Immunity – Leach Issues*

A.  *Waiver by Operating Procedure*

We first address Leach's argument that the University's immunity was waived by statute.  The statute in question is §109.001(c) of the Texas Education Code.  Through it, the legislature wrote:

> The governance, control, jurisdiction, organization, and management  of the Texas Tech University System is hereby vested in the present board of regents of Texas Tech University, which will hereinafter be known and designated as the board of regents of the Texas Tech University System.  The board by rule may delegate a power or duty of the board to an officer, employee, or other agent of the board.

TEX. EDUC. CODE ANN. §109.001(c) (Vernon 2002).   Per that grant, the University enacted specific "operating policy and procedures" allowing an employee to "elect to remove such issues of grievance or complaint from further consideration through . . ." the school's administrative process if the employee "files substantially the same issues  . . . with any external agency or court . . . ."  Leach reads this as consent from the University to sue it in state court.  We disagree for several reasons.

First, and assuming *arguendo* that any state-supported university has the power to waive its immunity, such a waiver is not explicit in the "operating policy and procedures" at issue.  Recognizing that an employee may end an internal grievance proceeding if the same complaint is encompassed within a later suit speaks to whether the person must exhaust internal administrative remedies before suing.  It does not speak to the matter of waiving immunity.  Indeed, nothing in the procedure even mentions immunity, much less

8

its waiver. And, there are situations requiring the exhaustion of administrative remedies before suit may be filed, such as when someone alleges claims under the Texas Whistleblower Act. *See* TEX. GOV'T CODE ANN. §554.006 (Vernon 2004) (requiring the aggrieved employee to exhaust his existing administrative remedies before filing suit). *See also* TEX. CIV. PRAC. & REM. CODE ANN. §101.101(a) (Vernon 2005).

Second, that the University's legal counsel, chancellor, or president may have thought Leach had the ability to prosecute his claims in a court of law (as Leach posits) is of no moment. Admittedly, someone's personal opinion about the meaning of rules and regulations may be informative or interesting. Yet, they are just that, opinions that may be informative or interesting. They have no binding effect on a court since the latter construes legal writings, such as rules and statutes, *de novo. City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex. 2003) (holding that statutes and rules are subject to *de novo* review).

Finally, and to the extent Leach argues that the University's operating procedures are comparable to state statutes, we abide by the legislature's unambiguous directive regarding the waiver of immunity. Again, per that directive, a statute "shall not be construed" as waiving immunity unless the "waiver is effected by clear and unambiguous language." TEX. GOV'T CODE ANN. §311.034 (Vernon Supp. 2010). Those words plainly mean that any waiver one attempts to derive from a statute must be clear and unambiguous. And, the statute underlying Leach's claim of waiver is §109.001(c). According to him, it purports to vest the University's regents with the power to do most anything they want, including the power to waive immunity. Yet, nothing in it expressly addresses immunity or its waiver. Nor does Leach cite us to authority suggesting that the

9

legislature even had the topic of immunity in mind when enacting the provision. So, if we were to accept Leach's contention, we would have to say that a legislative statement omitting all explicit or implicit reference to immunity actually encompasses that subject. Though some may find it fun to engage in creative legal gymnastics to achieve a desired end, we opt not to join them. Instead, our decision is to reject the notion that by enacting §109.001(c) the legislature unambiguously permitted the University to waive its immunity. *See Foster v. Teacher Ret. Sys.*, 273 S.W.3d 883, 886-87 (Tex. App.–Austin 2008, no pet.) (rejecting the argument that because the legislature vested the Texas Retirement System with the power to adopt necessary rules and procedures, the System had the implied power to waive its immunity and stating that administrative agencies created by the legislature cannot waive immunity on behalf of the legislature).

B. *Whistleblower Claim*

Next, Leach argues that the trial court erred in dismissing his whistleblower claim. We again disagree and overrule the issue.

It is true that suits upon claims arising under what we know as the Texas Whistleblower's Act, TEX. GOV'T CODE ANN. §554.001 *et seq.* (Vernon 2004) are not barred by sovereign immunity. *Id.* §554.0035. Nonetheless, to enjoy that freedom to sue, the complainant must plead facts establishing jurisdiction. In other words, he must allege facts in his original petition satisfying the elements of the cause of action for which immunity has been waived. *See State v. Lueck*, 290 S.W.3d 276, 883-85 (Tex. 2009) (holding that the elements of §554.002(a) can be considered to determine both jurisdiction and liability). That did not happen here. Nor do we think his petition is capable of being amended to meet the requirement given the facts involved.

10

The Whistleblower Act forbids a "state or local governmental entity . . . [from] suspend[ing] or terminat[ing] the employment of, or tak[ing] other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority."  TEX. GOV'T CODE ANN. §554.002(a) (Vernon 2004).  Furthermore, a "report is made to an appropriate law enforcement authority if the authority" receiving the report "is a part of a state or local governmental entity . . . that the employee in good faith believes is authorized to . . . regulate under or enforce the law alleged to be violated . . . or . . . investigate or prosecute a violation of criminal law."  *Id.* §554.002(b).  Here, the alleged report consisted of Leach filing suit against the University, among others, in the district court.

The legislature did not explain what it meant by "report" when drafting §554.002.  Yet, we hold that it did not include the specific situation here, given applicable rules of statutory construction.  Per those rules, our primary objective is to ascertain and give effect to the legislature's intent.  *Tex. DOT v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004).  This obligates us to consider 1) the plain and common meaning of the words utilized in the writing, 2) the context in which those words were used, 3) the objective sought by the legislature, and 4) the consequences of a particular construction.  *Id.*; *accord* TEX. GOV'T CODE ANN. §311.011(a) (Vernon 2005) (stating that when words appearing in a statute are not defined by legislature, those interpreting them must read them in context and construe them according to the rules of grammar and common usage).

11

According to the dictionary, a "report" consists of relating, disclosing, or accounting for particular facts, events, circumstances or things. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1056 (11th ed. 2003). A report card, for instance, gives an account of a student's grades while a police report relates the supposed facts of an event. So, if one was to only consider this commonly understood meaning of report, it would be rather easy to conclude that an original petition commencing a lawsuit falls within the realm of a report. Indeed, most petitions, if appropriately drafted, disclose circumstances or misconduct that the complainant views as entitling him to relief. However, the consideration of criteria in addition to the plain meaning of the word is necessary if we are to abide by the mandate of the Supreme Court.

One of those additional criteria is the context within which the word appears. The relevant context here includes reference to an "appropriate law enforcement authority." Again, such an entity is one charged with the ability to enforce or regulate the laws purportedly breached or investigate the breach of those laws. *Tex. DOT v. Needham,* 82 S.W.3d 314, 319-20 (Tex. 2002). The description calls forth visions of police, administrative agencies, district attorneys, the attorney general, and like bodies commonly associated with investigating and enforcing the law. It takes a much greater stretch of the imagination to include a district court within the category. Indeed, precedent recognizes that the role of the judiciary excludes investigative or executive functions of the type contemplated by the statute. *Robertson County v. Wymola*, 17 S.W.3d 334, 341 (Tex. App.–Austin 2000, pet. denied) (involving a whistleblower complaint). And, the void is not filled simply because a district court has some "general" authority to intercede in legal matters, especially when that authority is adjudicative as

12

opposed to investigative or regulatory. *See Tex. DOT v. Needham*, 82 S.W.3d at 319-20 (stating that it is not enough for the entity to have general authority to investigate or regulate a matter).

We further note that portion of the act requiring the whistleblower to exhaust administrative remedies before seeking judicial relief. That is, the statute clearly obligates the aggrieved employee to "initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing." TEX. GOV'T CODE ANN. §554.006(a) (Vernon 2004). It makes little sense to have this requirement if filing an original petition in a court of law constitutes an acceptable report under the act. *See Wilson v. Arlington Indep. Sch. Dist.*, No. 4:00-CV-0069-A, 2001 U.S. Dist. LEXIS 10715, at *12 (N.D. Tex. July 26, 2001) (stating that unless administrative remedies are exhausted per the statute, a trial court lacks subject matter jurisdiction over the whistleblower complaint). Indeed, to hold otherwise would be tantamount to negating the obligation to first pursue administrative avenues of relief, and we must endeavor to read a statute in a way that negates no portion of it. *Mid-Century Ins. Co. v. Ademaj,* 243 S.W.3d 618, 621 (Tex. 2007).

Simply put, the factual allegations contained in Leach's petition, the context in which the word "report" appears, and the traditional purpose of the judiciary lead us to conclude, as a matter of law, that filing a lawsuit against the University and others failed to satisfy the mandate of §554.002(a). This is not to say that circumstances unlike those at bar may lead to a different result.[4] But, filing suit to redress claims of breached

---

[4]For instance, a district judge may well be the appropriate authority with whom to file a report if the complaint involves the misconduct of a county auditor. Since the latter post is filled by a district judge, TEX.

13

contract and constitutional deprivation arising from the termination of the complainant's job is not such a circumstance.

As for the argument that all Leach needed was to believe, in good faith, that his lawsuit constituted the requisite report, we say the following. It is true that the employee need only have a good faith belief that he is complying with the elements of §554.002(a). *Tex. DOT v. Needham*, 82 S.W.3d at 320; *Potter County v. Parton*, No. 07-03-0338-CV, 2005 Tex. App. LEXIS 4381, at *8-9 (Tex. App.–Amarillo June 8, 2005, no pet.). Yet, good faith involves more than what the employee may have believed subjectively. *Potter County v. Parton,* 2005 Tex. App. LEXIS 4381, at *8-9. Rather, the phrase has two components, one subjective (*i.e.* what the employee actually believed) and the other objective (*i.e.* whether a reasonably prudent person in the same circumstances could have thought that). *Id.* And, whether the latter component exists depends on circumstances such as the information available to the employee, his education and experience, the nature of the dispute, and the nature of the entity involved, for example. *See id.* at *10 (describing the objective component as being a "reasonable [belief] in light of [the reporting employee's] training and experience").

Here, the complainant was a successful NCAA division one football coach with a college degree and who received post-graduate legal training. One can reasonably assume that it takes a bit of savvy and intelligence to successfully field a team at that level of play and navigate through the morass of NCAA rules and regulations. Moreover, a person having such an educational background and professional skills is somewhat different than the ordinary layman unskilled in interpreting technical or legal jargon. To

LOC. GOV'T CODE ANN. §84.002(a) & (b) (Vernon 2008), and the district judge also may remove the auditor, *id.* §84.009, then a district judge may be the one best able to address the incident. But, that is not a question we must decide today.

14

this, we add the circumstance that Leach was not left alone to sojourn through a legal maze once the University initiated steps to discipline him. He had several attorneys to help him uncover, analyze, and apply the laws of Texas. Together, they not only dealt with the University's allegations but also filed the lawsuit before us. Moreover, the judicial precedent and statutory writings upon which we rely were available to them, as well. Given this, we arrive at but one conclusion. A reasonable person in the same circumstances and having the same experience, education, and legal help as Leach would not have ignored statutorily mandated exhaustion requirements and pertinent judicial writings to deduce that filing a lawsuit satisfied the elements of §554.002(a).[5] In short, no evidence exists enabling us to conclude that Leach satisfied the objective prong of a good faith belief.

C. *Constitutional Claims*

We next address the argument that the trial court erred in dismissing Leach's constitutional claims. The claims in question involve the purported taking without

---

[5]That Leach cites us to *City of Elsa v. Gonzalez*, 292 S.W.3d 221 (Tex. App.–Corpus Christi 2009) *rev'd,* 2010 Tex. LEXIS 693 (Tex. October 1, 2010) as indicating that a constitutional county judge may be an acceptable authority with whom to file a report is of no import. This is so for several reasons. First, the Supreme Court reversed the cited opinion and instead held that Gonzalez failed to satisfy the need to file, in good faith, a report with the pertinent authority. *City of Elsa v. Gonzalez,* No. 09-0834, 2010 Tex. LEXIS 693, at *15 (Tex. October 1, 2010). Second, the office and duties of a constitutional county judge are quite different from those of a county court at law or district court judge. Admittedly, each exercises adjudicative powers, but a constitutional county court judge actually acts as the administrative head of the county and runs, with the help of commissioners, that level of government. So, the hat he wears is also highly legislative and executive in nature. Moreover, in performing his legislative and executive duties, a constitutional county judge is much more likely to be lawfully obliged to investigate and regulate matters of the county and coffers he oversees than would be a district judge *viz* the conduct of a state chartered university. Finally, and as noted by the Supreme Court in its *City of Elsa* opinion, the appropriate authority contemplated in the Whistleblower Act is one that can do more than simply act in a remedial manner. *Id.* at *14, *citing Duvall v. Tex. Dep't of Human Services,* 82 S.W.3d 474, 481-82 (Tex. App.–Austin 2002, no pet.). Since a constitutional county court judge exercises legislative and executive powers, his post affords him greater ability to act in ways other than remedial. The same generally cannot be said of either a county court at law and district court judge whose acts are remedial in nature, *i.e.* they adjudicate disputes and remediate purported wrongs.

15

compensation of Leach's property and his termination without due process.[6]  We overrule the issues in part.

### 1. Takings Claim

With regard to the takings claim, we find the Supreme Court's decision in *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591 (Tex. 2001) dispositive. According to the Supreme Court in *Little-Tex*, to establish a takings claim, the complainant must prove 1) that the State intentionally performed certain acts, 2) that the acts resulted in a "taking" of property, and 3) that the property was taken for public use. *Id.* at 598.  These elements are not satisfied when the State withholds property in a contractual dispute.  This is apparently so because the party demanding compensation after performing his contractual duty to provide goods or services actually provided those goods or services voluntarily as opposed to being forced to do so via the State's power of eminent domain.  *Id.* at 598-99, *quoting State v. Steck Co.*, 236 S.W.2d 866 (Tex. Civ. App.–Austin 1951, writ ref'd).  So, when the State withholds property under color of a contractual right, such as when it believes the contract was not properly performed, it is not acting as a sovereign invoking powers of eminent domain, but rather as a private party to a contract invoking rights expressed or implicit in the contract.  *Id.* at 599.  Thus, the takings clause appearing under Texas Constitution art. I, §17 does not apply to contractual disputes.[7]

---

[6]According to his live pleading, Leach restricts his due process claim to the rights emanating from art. I, §19 of the Texas Constitution.  Nothing is said about the Due Process Clause contained in either the Fifth or Fourteenth Amendments to the United States Constitution.

[7]That the State is not acting as a sovereign (but rather a private party) when withholding money due under a contract but nonetheless enjoys immunity from suit for withholding that money because it is deemed the sovereign is somewhat of a contradiction.  No doubt there is a reasonable explanation for the apparent inconsistency, and the Supreme Court is in the best position to explain it.

The compensation sought by and allegedly due Leach is that which the University contracted to pay him in return for his performance of services as the head football coach. The University purports to withhold that compensation because Leach failed to abide by the terms of their accord. Thus, what we have here is nothing other than a contractual dispute described in *Little-Tex* and which falls outside the takings clause.

### 2. Denial of Due Course of Law

As for the dispute regarding due process, Leach argues that he was denied constitutionally protected interests without due course of law. The property rights at issue were to 1) continue employment for a term of years (except when terminated for cause) and 2) specific compensation accruing while so employed. And because he tendered sufficient evidence establishing the constitutional claim, it allegedly was error for the trial court to use the doctrine of sovereign immunity to dismiss it. We sustain the issue for several reasons.

Sovereign immunity bars a trial court from adjudicating lawsuits through which a complainant seeks money damages from the State. *Tex. Natural Res. & Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). It does not pretermit legal actions against a governmental entity seeking equitable relief to redress violations of the Texas Constitution. *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995); *City of Arlington v. Randall*, 301 S.W.3d 896, 906-07 (Tex. App.–Fort Worth 2009, pet. filed). One means of determining whether constitutional violations have occurred that survive the invocation of sovereign immunity is through prosecuting a declaratory action. *Id.* at 908-09*; Andrade v. NAACP of Austin*, 287 S.W.3d 240, 251 (Tex. App.–Austin 2009, pet. granted). Leach requested such

17

declaratory relief here when seeking a declaration of whether he was denied a constitutionally protected interest by the University without due course of the law. *See* TEX. CONST*.* art. I, §19 (stating that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land"). Admittedly, he cannot avoid the shield of sovereign immunity by simply morphing a demand for monetary relief into one for declaratory relief, *City of El Paso v. Heinrich*, 284 S.W.3d at 370-71, and that is what the University contended he did here. That is, it argued through its plea to the court's jurisdiction that his pleadings regarding the due course of law violations were "a disguised attempt to obtain money damages under the 2009 Contract recast as a declaratory judgment claim." Yet, whether Leach had a constitutionally protected interest (property or liberty) that was denied him without due process is quite distinct from whether the University breached the employment contract. It is possible for there to be a due process violation without a breach of contract or a breach of contract without a due process violation. So, simply because both types of claims may be included in the same petition does not *ipso facto* mean that the constitutional allegation is a mere "disguised attempt to obtain money damages" for a breach of contract. Examining the nature of the relief sought is determinative for one may invoke the jurisdiction of Texas courts via a declaratory action to redress, through equitable remedies, unconstitutional acts. *City of Elsa v. M.A.L.*, *supra*. So, the trial court had jurisdiction to declare whether Leach was denied due course of law even though it cannot adjudicate the attempt to recover damages for breach of contract. The same may be true for other choses-in-action that he may assert

and which are independent of his breach of contract claim; they must be assessed on an individual basis.

### D. Dismissal of Bailey, Myers, and Bingham

Leach next contends that the trial court erred in dismissing the claims asserted against President Bailey, Athletic Director Myers and Vice-Chancellor Bingham in their official capacities simply because he had sued the University as well. We dismiss this particular contention for want of jurisdiction.

The trial court's decision was not founded upon sovereign immunity but rather its construction of §101.106 of the Texas Civil Practice and Remedies Code. The latter deals with a plaintiff's decision to sue both a governmental unit and its employees and bars the plaintiff from suing both. TEX. CIV. PRAC. & REM. CODE ANN. §101.106(a) (Vernon 2005) (stating that the filing of a suit under the tort claims act against a governmental unit constitutes an irrevocable election by the plaintiff and bars any suit or recovery against the individual employee regarding the same subject matter).

Next, our jurisdiction is not plenary. We can only review suits wherein a final judgment or order has been entered. *Lehmann v. Har-Con Corp.,* 39 S.W.3d 191, 195 (Tex. 2001). This is not true, though, if the dispute encompasses an issue addressed in §51.014 of the Texas Civil Practice and Remedies Code. In such situations, we may consider the dispute though the trial court has yet to dispose of the entire action. TEX. CIV. PRAC. & REM. CODE ANN. §51.04 (Vernon 2005). Dismissing governmental employees under §101.106 because the plaintiff sued their employer falls within none of the categories itemized in §51.014. It does not involve 1) receivers or trustees or their appointment or removal, 2) a temporary injunction, 3) the denial of a motion for summary

judgment based on an assertion of immunity, 4) a special appearance, 5) a plea to the trial court's jurisdiction filed "by a governmental unit," or any other topic mentioned in the statute. So, because the order of dismissal from which appeal was taken does not dispose of all claims asserted against all defendants (*i.e.* Craig James, Larry Anders, and Jerry Turner) we have no jurisdiction to resolve this aspect of the appeal. The particular dispute remains before the trial court should it care to consider its decision in light of the Supreme Court's recent opinions in *Tex. Lottery Comm'n v. First State Bank of DeQueen,* 323 S.W.3d 628 (Tex. 2010) and *City of El Paso v. Heinrich*.

***The University's Appellate Issues***

A.  *Breach of Contract*

Through its sole issue, the University argues that the trial court erred in refusing to dismiss Leach's breach of contract allegation. Again, the trial court refused to do so because it reasoned that the University "waived its immunity from suit . . . by and through its conduct." We sustain the issue.

As previously mentioned, the Supreme Court left open, in *Federal Sign*, the question of whether the state entity may waive its immunity through its conduct. Yet, whether the idea of waiving immunity through conduct extends to choses-in-action sounding in breach of contract is not an open question. In *General Servs. Comm'n. v. Little-Tex Insulation Co.*, Little-Tex sued Texas A&M for breach of contract and argued that the school waived its immunity by accepting the benefits of the contract. The proposition was rejected by the Supreme Court after acknowledging that it had left open "the question of whether the State's conduct may waive its immunity from suit." *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d at 595. The Court rather clearly

20

stated that "there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature." *Id.* at 597; *accord Tex. Parks & Wildlife Dep't v E. E. Lowrey Realty, Ltd.*, 235 S.W.3d 692, 695 n.2 (Tex. 2007) (stating that "Lowrey could only pursue a breach of contract claim against the State if he first obtained legislative consent . . ."); *Tex. Natural Res. Conservation Comm'n. v. IT-Davy*, 74 S.W.3d at 856-57 (rejecting application of the waiver-by-conduct doctrine in breach of contract suits and reaffirming that only the legislature can waive immunity).

Admittedly, the factual circumstances in *Little-Tex* differ from those before us. And, because of that Leach argues that the holding does not control the outcome here. Though the circumstances may differ between the two suits, the Supreme Court in *Little-Tex* actually focused not upon the facts underlying the cause of action but rather upon the cause of action itself, that is, the claim of breached contract. Nor did it simply say that a governmental entity retains its immunity even though it accepted contractual benefits. Rather, it told us that there was only one way the State could be sued for breach of contract and that involved first garnering the legislature's approval via chapter 107 of the Texas Civil Practice and Remedies Code. *See Employees Retirement Sys. v. Putnam, LLC.*, 294 S.W.3d 309, 327 (Tex. App.–Austin 2009, no pet.) (also recognizing the Supreme Court's "rejection of the waiver-by-conduct doctrine since *Federal Sign*" in suits for breached contract).

We also recognize that our opinion contradicts that in *Texas Southern University v. State Street Bank & Trust Co.*, 212 S.W.2d 893 (Tex. App.–Houston [1st Dist.] 2007, pet. denied). In that breach of contract case, the intermediate court of appeals held that the University's conduct resulted in the waiver of its immunity. That decision, however,

21

contradicts the Supreme Court's statements in *Little-Tex*, *IT-Davy*, and *E. E. Lowrey Realty*, *Ltd.* about the only avenue for redress being through the Texas Legislature.  If the highest civil court in Texas truly means what it said, then the holding in *State Street* simply is wrong.  If, on the other hand, there may still be instances akin to those in *State Street* warranting the application of waiver by conduct, then the Supreme's Court's utterances about the legislature having the exclusive authority to waive sovereign immunity are inaccurate.  In either case, it is a matter for the Supreme Court (or Texas Legislature) to resolve, and we have no choice but to abide by their decision.

In sum, we reverse those portions of the trial court's order 1) dismissing, for want of jurisdiction, Leach's due course of law claim and request for non-monetary declaratory and equitable relief founded upon it and 2) concluding that Texas Tech University waived its sovereign immunity from the breach of contract claim due to its conduct.  We next dismiss, for want of jurisdiction, the appellate issue involving whether Bailey, Myers, and Bingham were properly dismissed by the trial court, render judgment dismissing Leach's claim of breached contract against the University, and affirm the remainder of the order granting the pleas to the trial court's jurisdiction.


Brian Quinn
Chief Justice

22