NO. 07-11-0467-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MAY 17, 2012
_____

CITY OF AMARILLO,

Appellant

v.

KEITH BRIAN BURCH,

Appellee
_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 63645A; HONORABLE RICHARD DAMBOLD, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

We have before us an interlocutory appeal from an order denying a plea to the jurisdiction of the trial court filed by the City of Amarillo (the City). The latter contended that sovereign immunity barred Keith Brian Burch (Burch) from pursuing his suit against it. Burch had sued the City for inverse condemnation and breach of contract. The claims arose from water runoff being diverted through streets and other "infrastructure" of the City across and into lands and a playa lake owned by Burch. According to the live petition, the force of the runoff was sufficiently "enormous" to erode the soil

surrounding the lake and destroy improvements installed on the property.[1]   As previously mentioned, the City sought the dismissal of the entire suit due to its alleged immunity.  And, because the trial court did not grant the motion, it purportedly erred.  We affirm.

*Applicable Law*

No one disputes that municipal corporations like the City generally enjoy sovereign immunity.  *Tooke v. City of Mexia,* 197 S.W.3d 325, 332 (Tex. 2006) (describing the immunity as immunity from liability and immunity from suit).  Nor do they deny that such immunity has its exceptions or limitations.  The controversy facing us involves whether any such exception or limitation applies here.  In determining that, we look to the factual allegations contained within the plaintiff's (*i.e.* Burch's) live petition, interpret them in a light most favorable to the party attempting to defeat the claim of immunity, accept as true all evidence favorable to that party, and indulge in every reasonable inference arising from any evidence that may be proffered and that is favorable to him.  *Leach v. Texas Tech University*, 335 S.W.3d 386, 391 (Tex. App.– Amarillo 2011, pet. denied), *accord*, *Texas Dep't Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).  Indeed, the analysis in which we engage likens to that used when assessing the propriety of granting a summary judgment.  *Leach v. Texas Tech University*, 335 S.W.3d at 391.  Unless it can be said, as a matter of law, that sovereign immunity bars all causes of action, the suit cannot be dismissed.

---

[1]Burch mentioned in his petition that the excessive drainage onto his property destroyed natural springs within and floating docks upon the lake, washed-out trees and other vegetation, and caused a concrete driveway to collapse.  Due to the City's activities, its engineer also informed Burch to end the fishing membership business being conducted on the lake, according to Burch.

*Application of Law*

Here, Burch, via his live petition, asserted an inverse condemnation (or takings) claim and a cause of action sounding in breached contract. Those same pleadings, when liberally construed in a way most favorable to him, also indicate that the two claims arise from the City's acts of intentionally constructing its streets and other infrastructure surrounding his playa lake in a way that directs runoff into the lake. And, in so doing, the acts effectively denied him the ability to use or enjoy the lake because of the destructive force of the runoff.

It is clear that the Texas Constitution prohibits the taking, damaging, or destroying of one's property for a public use without adequate compensation. TEX. CONST. art. 1, §17(a); *State v. Brownlow*, 319 S.W.3d 649, 652 (Tex. 2010). A cause of action founded upon that prohibition is commonly referred to as a "takings claim." Similarly clear is that an inverse condemnation claim is not only another name for a takings claim but also a claim that survives the invocation of sovereign immunity. *State v. Brownlow*, 319 S.W.3d at 652.

Next, for there to be a viable inverse condemnation claim, the governmental entity must, "instead of initiating proceedings to condemn property through its powers of eminent domain, . . . intentionally physically appropriate[] or otherwise unreasonably interfere[] with the owner's right to use and enjoy his or her property." *Id.*; *Leach v. Texas Tech University*, 335 S.W.3d at 398 (stating that to establish a takings claim, the complainant must prove 1) that the State intentionally performed certain acts, 2) that the acts resulted in a "taking" of property, and 3) that the property was taken for public use). A governmental entity's intentional building of streets, drainage systems, and other

3

infrastructure that divert sufficient water on or into property of another with the destructive force averred here raises a question of fact regarding whether a taking has occurred. *See City of Borger v.* Garcia, 290 S.W.3d 325, 330 (Tex. App.–Amarillo 2009, pet. denied). Thus, Burch averred at least one chose-in-action that is not defeated by sovereign immunity.

The City argues, though, that it had a right to so divert the water through the property. Furthermore, the right purportedly arose from not only the license and settlement agreement mentioned in Burch's live pleading but also an easement previously granted to it. While such circumstances could effectively negate a takings claim, *see e.g. Kirby Lake Dev. Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829 (Tex. 2010) (noting that consent can vitiate an otherwise valid takings claim), we cannot hold, as a matter of law, that it does here.

Simply put, the record necessitates further development regarding the extent of any interest or right the City has to divert storm water onto the property in question. It is true that the license and settlement agreement contains verbiage giving the City some authority to enter upon the property and undertake certain tasks. Yet, nothing in it mentions the ability to divert water from the surrounding neighborhood into the lake. Instead, it speaks of granting the City permission

> to enter (ingress and egress) onto and across the Property for the *limited purpose* of conducting erosion control, abatement, or prevention necessary to protect GRANTEE'S adjacent streets, alleys, right-of-way, utilities, and other infrastructure, *by means of* inspection, construction, maintenance, repair, removing, replacing and upgrading any aspect of the ground slope, vegetation, outfalls, and appurtenances which are upon, over, under or across the Property.

4

(Emphasis added). Accompanying that permission was "the right to inspect, rebuild, improve, and make such reasonable changes, alterations, additions to or extensions of its facilities [constructed on the Property] as are consistent with the purpose expressed." These provisions reveal that the purposes for which entry is permitted are limited. They allow the City to enter and leave the property to control erosion and to protect its adjacent infrastructure. Yet, the parties to the agreement described how that erosion control, abatement, and the like could be conducted on the property. And, in so describing how it could be done, nothing was said of diverting or dumping water across the land or into the lake. Instead, the City was allowed to undertake its erosion control efforts by inspecting, constructing, maintaining, repairing, removing, replacing and upgrading the ground slope, vegetation, outfalls, and appurtenances on the land. In so inspecting, constructing, maintaining, etc., the City also agreed to "use reasonable effort to avoid interference with [Burch's] activities on the Property." So, the rights extended via the agreement were and are not carte blanche. Contrary to the City's suppositions, those provisions do not grant it the "blanket" right to do as it will. And, to the extent that dumping large quantities of water onto the property at issue falls outside inspecting, constructing, maintaining, repairing, removing, replacing and upgrading the ground slope, vegetation, outfalls, and appurtenances on the land, the license and settlement agreement did not authorize it.

That the City may have also received, from Burch's predecessor-in-title, an easement to construct, reconstruct, and maintain a "drainage way or storm sewer lines . . . in, on or across . . ." does not alter our conclusion. Assuming *arguendo* that the easement encompassed the authority to divert runoff across the land, question

5

exists as to whether the City relinquished that entitlement by signing the aforementioned license and settlement agreement. Under section one of that document, the parties alluded to existing disputes over "liability and damages for diversion of surface water or storm water into and onto the Property." Thereafter, the "Grantee," *i.e.* the City, waived, released, forgave, and settled "any and all claims, causes of action, damages, attorney's fees, other costs, and *interest* that *GRANTEE* may now or could in the future assert against GRANTEE . . . which in any way relates to or arises out of the alleged diversion of surface water . . . ." (Emphasis added). This passage can be interpreted as the City agreeing to waive or release whatever claims and interests it had regarding the diversion of water across or into the playa lake, and one such interest would or could be that granted in the prior easement.[2]

In sum, the tenor of the current record prevents us from saying, as a matter of law, that Burch failed to properly allege an inverse condemnation or takings claim. Indeed, this is one of those situations where more is needed before anyone can conclude with any reasonable assurance that sovereign immunity applies. Thus, the trial court did not err in refusing to 1) grant the City's plea and 2) dismiss the suit. This is not to say that the contract claim uttered by Burch survives the defense of sovereign immunity. Below and at bar, the City asked that the *entire* suit be dismissed, and it was and is not entitled to that.

---

[2]Frankly, the passage evinces a bit of inartful word-smithing. As written, the City agrees to waive and release claims and interests it has against itself, and that immediately leads one to wonder why it would do that. Nonetheless, parties to an agreement are free to write it as they choose. Or it could be that the parties mistakenly used the word "grantee" one too many times. Maybe the grantee sought to release claims and interests it had against the grantor regarding the diversion of water. Or, maybe the grantor intended to release claims and interests he had against the City regarding the same subject matter. We do not know, and until a party to the license agreement suggests that it does not mean what it actually says and proffers evidence of the true intent (and none have), we read it as written.

6

The order denying the City's plea to the trial court's jurisdiction is affirmed.[3]

Brian Quinn
Chief Justice

---

[3]The majority joins in the concurrence of Justice Campbell and believes that the effort to avoid adjudicating the merits of a dispute via pleas to the jurisdiction have effectively done the opposite. Governmental entities being sued are invariably attacking the substantive merits underlying the cause of action to establish immunity. That may not be the result intended by the Supreme Court in opinions such as *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554-55 (Tex. 2000) (allowing the trial court to consider evidence when resolving jurisdiction issues), but that has been the result nonetheless.