

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00400-CV

CITY OF HEREFORD, APPELLANT

V.

JAVIER FRAUSTO, APPELLEE

On Appeal from the 222nd District Court
Deaf Smith County, Texas
Trial Court No. CI-16F-076, Honorable Roland Saul, Presiding

January 16, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL, and PARKER, JJ.

The City of Hereford appeals from an order denying its original and amended plea to the jurisdiction. Through those motions, the City requested the trial court to dismiss Javier Frausto's suit against it. He had sued the City under the Texas Whistleblower Act. *See* TEX. GOV'T CODE ANN. §§ 554.001–.010 (West 2012). The record indicates that the City answered the suit, affirmatively invoked the defense of immunity, and filed the aforementioned original and an amended plea to the jurisdiction of the court. As specified in the amended plea, "[t]he subject of this plea to the jurisdiction is the 'good faith' report

component of Frausto's Whistleblower Claim."  In other words, the City believed that Frausto could not prove that a reasonably prudent person with Frausto's training and experience would have believed that the purported act allegedly constituting a violation of the law was such a violation.  The trial court denied the plea, and the City appealed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2017) (authorizing an interlocutory appeal from an order that "grants or denies a plea to the jurisdiction filed by a governmental unit as that term is defined in Section 101.001" of the Texas Civil Practice and Remedies Code, which provision includes cities).  For the most part, the argument urged below forms the basis of the City's two issues before us.  We affirm.

*Background*

The story begins with a dog (i.e., a husky) running free in a local neighborhood.  At the time, Nena Aguillon and Destiny Martinez were walking two terriers tethered on leashes.  As they walked, the husky ran at and engaged them.  The husky's owner (Macye White) retrieved the animal, and Aguillon reported the attack to the police.  Upon responding to the report and taking statements from the respective parties, the police forwarded the incident to the local animal control department for further investigation. Frausto happened to be the employee of that department tasked with that investigation.

Frausto contacted Aguillon and, thereafter, filed a supplement to the police report. In that supplement, he said that (1) "Mrs. Aguillon stated to me that she wished to file charges on . . . [White] . . . for allowing her dog to run at large, [sic] and attacking her"; and (2) "I also gave Municipal Court Judge Eggan a copy of the incident report to inform her of the unprovoked attack outside . . . Whites [sic] property . . . .  Nothing further at this time."  Thereafter, Judge Eggan set the matter for hearing per § 822.0423 of the Texas

2

Health and Safety Code to determine whether the husky was a dangerous dog. *See* TEX. HEALTH & SAFETY CODE ANN. § 822.0423(a) (West 2017) (stating that "[t]he court on receiving a report of an incident under Section 822.0422 or on application under Section 822.042(c), shall set a time for a hearing to determine whether the dog is a dangerous dog"). At some point, the Hereford city attorney became aware of the hearing, purportedly reviewed the reports submitted to the municipal court judge, and decided to cancel the hearing.[1] Frausto deemed that decision to be unlawful and reported it to the local police chief. Several weeks later, his employment with the animal control department was terminated. Believing his termination improper, Frausto sued Hereford for violating the Whistleblower Act.

*Analysis*

Per § 554.002 of the Texas Government Code, a state or local government may not suspend or terminate a public employee "who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002(a). Establishing the elements of § 554.002(a) results in the governmental entity losing its sovereign immunity. *Id.* § 554.0035. And, because a claimant under the statute must allege facts in his petition sufficient to defeat immunity and establish the trial court's jurisdiction over the suit, he necessarily must allege facts sufficient to establish the elements of § 554.002(a). *See Leach v. Tex. Tech Univ.*, 335 S.W.3d 386, 395 (Tex. App.—Amarillo 2011, pet. denied).

---

[1] Via affidavit filed in support of the jurisdictional plea, the city attorney attested that he reviewed the incident reports sent by Frausto, concluded that they did not warrant a hearing, and engaged in an ex parte conversation about his conclusion with the municipal court judge. The judge then purportedly assigned him the task of informing Aguillon of the decision to cancel the hearing. It is unclear whether Frausto's complaint also encompassed the decision by the city attorney to speak with the judge about the incident outside the presence of anyone else, but he did allege that the attorney engaged in an abuse of office.

Yet, in deciding if the suit escapes the bar of sovereign immunity, the trial court is not restricted merely to the allegations contained in the complainant's petition. Rather, it may also consider evidence proffered by the entity in support of its plea to the jurisdiction. *See Creedmoor-Maha Water Supply Corp. v. Tex. Comm'n on Envtl. Quality*, 307 S.W.3d 505, 513 (Tex. App.—Austin 2010, no pet.) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004)). Proffering such evidence then triggers the application of a standard of review similar to the one used in deciding motions for summary judgment. *See Harris Cty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 798 (Tex. 2016) (op. on reh'g). That is, the trial court is to (1) interpret the pleadings in a light most favorable to the party attempting to sustain the existence of jurisdiction, (2) accept as true all evidence favorable to that party, and (3) indulge in every reasonable inference arising from the evidence and favorable to upholding jurisdiction. *Leach*, 335 S.W.3d at 391. And, should the trial court find that a question of fact exists with regard to the jurisdictional question when so construing the evidence, it must deny the plea to the jurisdiction and permit the fact-finder to ultimately decide those factual questions. *See Suarez v. City of Tex. City*, 465 S.W.3d 623, 633 (Tex. 2015). Only when the evidence creates no material question of fact may it rule on the plea as a matter of law. *See Harris Cty. Flood Control Dist.*, 499 S.W.3d at 798.

Next, and as previously mentioned, the only issue before the trial court and us was and is whether Frausto satisfied the "good faith" component of § 554.002 of the Government Code. We address nothing else and are asked to address nothing else. Nor do we in anyway suggest that other elements of § 554.002 were or can be satisfied.

4

Regarding "good faith," we note that it has both a subjective and objective component. *Tex. Youth Comm'n v. Bollinger*, No. 07-11-00152-CV, 2013 Tex. App. LEXIS 6503, at *5–6 (Tex. App.—Amarillo May 28, 2013, pet. denied) (mem. op.). The subjective prong requires the employee to actually believe he was reporting a violation of law to an appropriate law enforcement agency, while the objective component requires the belief to be objectively reasonable in light of his training and experience of the employee. *Id.* (quoting *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002)).

Here, Frausto alleged two violations of law purportedly committed by the city attorney. The first appeared in the opening sentence of section "6" of his first amended petition. Therein, he averred that he "reasonably believed that the cancellation of the hearing by the city attorney was a violation of Tex. Health & Safety Code § 822.0423." Later in the same section he also averred that he "believed . . . such conduct by the city attorney constituted an abuse of office in violation of Section 39.02(a) of the Texas Penal Code." *See* TEX. PENAL CODE ANN. § 39.02(a) (West 2016) (stating that a "public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly . . . violates a law relating to the public servant's office or employment").

As represented in his appellee's brief, Frausto "is no longer purs[u]ing any Whistleblower claim based upon a report of a violation of Section 39.02 of the Texas Penal Code." So, the sole violation pertinent to our review is that relating to the hearing's

5

cancellation by the city attorney.[2]  And, we turn to the task of assessing whether the evidence of record raised a question of fact as to whether it was held in "good faith."

As for the subjective component of the test, it needs little attention because it was not the focus of the City's plea.  Nevertheless, evidence appears of record upon which a fact-finder could find that Frausto actually believed the decision to cancel the hearing violated the law.   As said in his deposition, "the victim deserves a hearing like everybody else."

In play is the objective component of the test.  The City's extended discussion on that topic can be distilled into one simple proposition: because a reasonable animal control officer would not have believed the husky incident described in the written investigative reports submitted by the local police and Frausto was sufficient to warrant a hearing, a reasonable animal control officer would not have believed that cancellation of the hearing by the city attorney was a violation of the law.  The argument is flawed in several respects.

First, the purpose of the hearing in question was to determine whether the animal was a "dangerous dog," as that term is defined by statute.  *See* TEX. HEALTH & SAFETY CODE ANN. § 822.041(2)(A), (B) (West 2017) (defining a "dangerous dog" as a dog that (1) "makes an unprovoked attack on a person that causes bodily injury and occurs in a place other than an enclosure in which the dog was being kept and that was reasonably certain to prevent the dog from leaving the enclosure on its own" or (2) "commits

---

[2] Because Frausto waived the § 39.02 contention, we do not consider the City's appellate arguments concerning whether the ex-employee's belief about the existence of a § 39.02 violation also satisfied the good faith component of the Whistleblower Act.  Nor do we address whether the relinquishment of that allegation somehow impacts the viability of the claim regarding the city attorney's purported violation of the Health and Safety Code, especially since the City failed to broach the topic on appeal.

unprovoked acts in a place other than an enclosure in which the dog was being kept . . . and those acts cause a person to reasonably believe that the dog will attack and cause bodily injury to that person"). No one disputes that the Health and Safety Code directs ***"[t]he court*** to "set a time for a hearing to determine whether the dog is a dangerous dog," upon "receiving a report of an incident under Section 822.0422" of the same code. *See id.* § 822.0423(a) (emphasis added). That such a hearing actually had been set by the municipal court is also undisputed. Yet, nowhere does the City address whether either the Health and Safety Code or other legal authority empowered the ***city attorney*** to unilaterally cancel the proceeding. Nor does it address whether a reasonable person in the position of Frausto would have believed that the city attorney had the authority to rescind an edict of the trial court, i.e., cancel the hearing set by the municipal court. Moreover, in reading the allegations of his live pleading in a light most favorable to him per *Leach*, it can be said that Frausto complained about both the hearing being cancelled and the person who cancelled it. So, irrespective of whether a reasonable officer would not have believed the incident warranted a hearing, the City nonetheless failed to illustrate that the same reasonable officer would not have believed the ***city attorney's*** cancellation of a hearing by the municipal court violated the law. Those are two different matters.

Second, and as previously stated, the municipal court had set the matter for hearing after receiving the report transcribing the initial complaint to the police dispatcher, the report from the policeman who initially contacted the parties, and the report from Frausto. Thus, we have evidence of an intervening decision by an independent jurist who apparently deemed the complaint worthy of attention. That cannot be ignored in our assessment of what a reasonable officer in the position of Frausto would have thought.

Nevertheless, the circumstance went unmentioned in the City's analysis. Moreover, the record contains no evidence regarding whether a reasonable person in Frausto's position would have believed the reports failed to warrant a hearing when the court itself scheduled one after receiving those reports.

Third, the City repeatedly urged both this court and the trial court to apply a heightened standard when assessing whether a reasonable person would have believed what Frausto believed. In other words, it urged us to test what Frausto thought against what a reasonable animal control officer with the same training and experience would have thought under the same circumstances. No doubt precedent mandates consideration of the training and experience of an employee in appropriate circumstances. As said by our Supreme Court in *Wichita County*, "a workable, fair standard to determine if a report was made in 'good faith' must take into account differences in training and experience." *Wichita Cty. v. Hart,* 917 S.W.2d 779, 785 (Tex. 1996); *accord El Paso Healthcare Sys. v. Murphy*, 518 S.W.3d 412, 419 (Tex. 2017) (reiterating that the objective component of good faith is satisfied when "the employee's belief was reasonable in light of the employee's training and experience"). "A police officer, for example, may have had far more exposure and experience in determining whether an action violates the law than a teacher or file clerk." *Wichita Cty.*, 917 S.W.2d at 785. Applying that standard here though is problematic given the absence of evidence regarding the training and experience of either Frausto or a typical animal control officer in Hereford.

It may be that Frausto held the position for almost two decades before being discharged. Yet, nothing appears of record describing whether those appointed animal

8

control officers in the rural Texas community underwent specialized training or received any type of certification or the like. Nor can we merely presume that such training must occur as a prerequisite to being assigned the title "animal control officer" in Hereford, Texas.

Nor does the record contain evidence of the extent of Frausto's training, if any. He may well have served in the capacity of an animal control officer for many years and participated in numerous hearings like that original scheduled at bar. Yet, merely holding the position for such a duration does not mean the hypothetically reasonable, rural animal control officer with some unknown quantum of training and experience would have done or believed anything differently than Frausto. Without knowing what training an animal control officer receives, our testing of Frausto's belief against that of a reasonable animal control officer with the same unknown training and experience is an impossibility. In other words, no one provided us the requisite basis for applying the heightened standard alluded to in *Wichita County*.

Next, we turn to what does appear of record and apply it to the relevant authority. The hearing was to determine whether the husky constituted a dangerous dog. And, we acknowledge that explicit in the definition of a "dangerous dog" is reference to a person, rather than a dog, suffering bodily injury, as suggested by the City. For instance, subparagraph (2)(A) of § 822.041 mentions "an unprovoked attack ***on a person that causes bodily injury***," TEX. HEALTH & SAFETY CODE ANN. § 822.041(2)(A) (emphasis added), while (2)(B) alludes to "unprovoked acts . . . [that] cause ***a person*** to reasonably believe that the dog will attack and ***cause bodily injury to that person***." *Id.* § 822.041(2)(B) (emphasis added). Furthermore, two of the three reports (i.e., the report

from the police dispatcher and the initial police report) indicated that the husky only attacked the dogs that Aguillon and Martinez were walking.

Yet, another report appears in the record, and it is that of Frausto. In it, he described Aguillon complaining about the husky being allowed to run at large and "attacking her." As previously mentioned, we are obligated to read this information in a light most favorable to Frausto, and, in so reading the third report, we encounter the allegation of more than a mere dog-on-dog incident. Reference to the dog "attacking her" is some evidence that the animal also attacked Aguillon, i.e., a person. There is nothing unreasonable in inferring that a dog which previously attacked a dog without provocation may cause a person to reasonably believe the same animal will attack and cause bodily injury to a person. This prevents us from holding, as a matter of law, that a reasonable animal control officer would deem an allegation of a prior unprovoked attack on multiple dogs and a person insufficient basis to report a "dangerous dog" incident for purposes of convening a hearing under § 822.0423 of the Health and Safety Code. At the very least, the circumstances and information described in all three reports were sufficient impetus for a presumably unbiased local municipal court judge charged with the job of adjudicating the situation to notify Aguillon via letter dated April 29, 2014, that a "dangerous dog hearing has been scheduled for . . . May 5, 2014[,] in regards to the alleged dog attack on April 24, 2014".

Admittedly, the City would have us ignore Frausto's report because (1) it consisted of mere conclusions and (2) a reasonable animal control officer with comparable training and experience would not have relied on mere conclusions when assessing whether an animal was a dangerous dog. But, again, we have no evidence of what training, if any,

10

an animal control officer in Hereford or anywhere else undergoes. Nor do we find anything in the applicable statutes defining the parameters or content of a dangerous dog report. We find nothing in the statutes specifying that such reports must contain factual details, as opposed to factual conclusions, before a "dangerous dog" hearing can be held. Indeed, all we find is the obligation of a court to set a hearing upon receiving a report of a "dangerous dog." Because any "person may report [such] an incident" to the local municipal, justice or county court, *id.* § 822.0422(b), the report need not come from only an animal control officer; it may very well come from a layperson untrained in the art of report-writing and investigation. That, in turn, suggests the prerequisites of a report are not as stringent as the City would have us apply here. And, no one can deny that, irrespective of whether the contents of the reports involved at bar satisfied any heightened technical standard, they were enough to cause the Hereford municipal court judge to set a hearing on the Aguillon/husky incident before the city attorney cancelled it. So, arguing that a reasonable animal control officer would not believe all three documents Frausto sent to the municipal judge were sufficient to warrant a hearing rings hollow.

Finally, we note that even if one were to ignore the language in Frausto's report about the husky "attacking" Aguillon, the evidence of record still evinces an unprovoked attack by the husky upon dogs being walked by two persons. Such circumstances may well fall within the scope of a "dangerous dog." As previously mentioned, the phrase includes a dog engaging in "unprovoked acts . . . [that] cause a person to reasonably believe that the dog will attack and cause bodily injury to that person." *Id.* § 822.041(2)(B). Omitted from that passage is language requiring that the "unprovoked acts" only encompass an attack on a person. This omission distinguishes the scope of

11

§ 822.041(2)(B) from that of § 822.041(2)(A) wherein the legislature mentioned "an unprovoked attack on a person." *Id.* § 822.041(2)(A). In other words, the legislature intended to expand the grasp of § 822.041(2)(B) to encompass incidents outside those within the scope of § 822.041(2)(A). Those incidents include situations where a person would reasonably believe that the dog will attack and cause bodily injury irrespective of whether the person is actually attacked. So, without more evidence than what appears of record here, we cannot say, as a matter of law, that it would be unreasonable for a person to think that a large dog known to charge at and bite leashed pets will also bite or injure; the person holding the leash. Indeed, one need only attempt to end a dog fight or stop his dog from being attacked by another to test the accuracy of that proposition.

At the very least, a question of fact exists regarding whether Frausto's belief about the city attorney violating the law was held in good faith. Consequently, the trial court did not err in denying the City's plea to the court's jurisdiction given the limited grounds encompassed within the plea. The order doing so is affirmed.

Brian Quinn
Chief Justice

12