Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/27/2017 09:09 AM CDT

John Craw, appellant, v. City of Lincoln,
Nebraska, and John and Jane Doe(s)
1 through 10, appellees.
___ N.W.2d ___

Filed June 20, 2017.    No. A-15-1070.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** An appellate court
   reviews a district court's order granting a motion to dismiss de novo,
   accepting all allegations in the complaint as true and drawing all reason-
   able inferences in favor of the nonmoving party.
2. **Motions to Dismiss: Pleadings.** To prevail against a motion to dis-
   miss for failure to state a claim, a plaintiff must allege sufficient facts,
   accepted as true, to state a claim to relief that is plausible on its face.
   In cases in which a plaintiff does not or cannot allege specific facts
   showing a necessary element, the factual allegations, taken as true, are
   nonetheless plausible if they suggest the existence of the element and
   raise a reasonable expectation that discovery will reveal evidence of the
   element or claim.
3. **Actions: Pleadings: Notice.** Civil actions are controlled by a liberal
   pleading regime; a party is only required to set forth a short and plain
   statement of the claim showing that the pleader is entitled to relief and
   is not required to plead legal theories or cite appropriate statutes so long
   as the pleading gives fair notice of the claims asserted.
4. **Actions: Pleadings.** The rationale for a liberal notice pleading standard
   in civil actions is that when a party has a valid claim, he or she should
   recover on it regardless of a failure to perceive the true basis of the
   claim at the pleading stage.
5. **Political Subdivisions Tort Claims Act.** The Political Subdivisions Tort
   Claims Act specifically excludes claims arising out of any interference
   with contract rights.
6. **Property.** A job is not the type of property for which inverse condem-
   nation claims can be brought.

7. **Due Process: Public Officers and Employees: Property: Contracts: Notice.** A public employee's due process rights arise from a contractually created property right to continued employment. A public employee with a property interest in his employment has the right to due process of law, which requires that the employee be provided with oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to explain his or her side of the story.

8. **Political Subdivisions Tort Claims Act: Wages.** A timely filing of a tort claim under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 2012), is not sufficient to satisfy the filing requirements of Neb. Rev. Stat. § 15-840 (Reissue 2012) for purposes of the application of the Nebraska Wage Payment and Collection Act, because the two underlying claims are separate and distinct.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Terry K. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Jeffery R. Kirkpatrick, Lincoln City Attorney, and Don W. Taute for appellees.

Pirtle, Bishop, and Arterburn, Judges.

Bishop, Judge.

John Craw appeals from a district court order dismissing with prejudice his amended complaint against the City of Lincoln, Nebraska, and John and Jane Doe(s) 1 through 10, who were "employees and/or agents of the City." (The City of Lincoln and John and Jane Doe(s) 1 through 10 will collectively be referred to as "the City.") We affirm in part the district court's dismissal, and in part reverse and remand for further proceedings.

## BACKGROUND

On October 30, 2013, Craw filed a complaint in the county court for Lancaster County against the City alleging four

causes of action related to his employment and termination as the "PGA Professional for Holmes Golf Course" in Lincoln. His first cause of action alleged as follows: that he submitted a claim to the City pursuant to the Political Subdivisions Tort Claims Act (PSTCA), Neb. Rev. Stat. § 13-901 et seq. (Reissue 2012), and his claim was denied; that "[d]uring the course of his work and employment with the City," Craw was "misclassified as an independent contractor and was wrongfully terminated from his position as the PGA Professional for the Holmes Golf Course, the last engagement for which was to expire and/or be ready for renewal on April 30, 2012," and his last day was October 30, 2011; that due to the City's negligence, Craw was damaged; and that he incurred damages including (1) past and future physical pain, mental suffering, and emotional distress, (2) past and future inconvenience, (3) damage to property, and (4) loss of use of property. His second cause of action alleged that the City damaged his property or property rights and deprived him of use of his property, entitling him to compensation under Neb. Const. art. I, § 21. His third cause of action alleged that he was entitled to recovery for his property damage pursuant to Neb. Rev. Stat. § 76-705 (Reissue 2009), because his property was damaged for public use without a condemnation proceeding. His fourth cause of action alleged "violations of the rights guaranteed to him by the Nebraska and United States[] Constitutions, by the statutes of the State of Nebraska and of the United States of America, all as regards civil rights and/or discrimination."

On May 28, 2014, the City filed a motion to dismiss Craw's complaint pursuant to both Neb. Ct. R. Pldg. § 6-1112(b)(1) (lack of subject matter jurisdiction) and § 6-1112(b)(6) (failure to state claim upon which relief can be granted).

In a form journal entry and order filed on June 27, 2014, the county court granted the City's motion to dismiss. Craw was granted 2 weeks to file an amended complaint or a motion to transfer to the district court.

On July 11, 2014, Craw, pursuant to Neb. Rev. Stat. § 25-2706 (Reissue 2016), filed a request to transfer the proceedings to the district court for Lancaster County, because the "relief requested, at least in part, is beyond the jurisdiction of [the county court] and exclusively within the jurisdiction of the District Court." The request for transfer motion was sustained on July 15. The proceedings were certified and transferred to the district court by the deputy clerk of the "Lancaster County Court" on August 29.

On September 23, 2014, the City filed a motion to dismiss Craw's complaint in the district court pursuant to § 6-1112(b)(1) and (6).

In an order filed on April 10, 2015, the district court granted the City's motion to dismiss Craw's complaint. The district court found that it lacked subject matter jurisdiction over Craw's third cause of action (which the court determined was a "statutory inverse condemnation claim") because § 76-705 requires that such actions be taken in the county court. The district court then found that Craw failed to state a claim upon which relief could be granted with regard to his first, second, and fourth causes of action, as discussed next.

The district court labeled Craw's first cause of action a "tort claim"; however, the district court "seriously question[ed]" whether Craw had "actually pled a tort claim as opposed to a claim based on contract." It said:

> The only well-pled factual allegation in the Complaint is that [Craw's] engagement as the Holmes Golf Course PGA Professional was terminated prior to the time it was set to expire and/or be renewed. [Craw's] use of the term "engagement" . . . suggests a contract-based claim. However, [Craw] also seeks damages for physical pain, mental suffering, and emotional distress, which suggest a tort claim. As it stands, the scant factual allegations of the Complaint are insufficient to allow the court to determine the true nature of [Craw's] first cause of action.

The district court found that the "difficulty in determining the type of claim that is actually pled" warranted dismissal without prejudice of Craw's first cause of action.

The district court described Craw's second cause of action as a "constitutional inverse condemnation claim," and it found that "[a]s alleged, [Craw's] engagement as the Holmes Park Golf Course PGA Professional is not the type of vested property right for which [a constitutional] inverse condemnation claim would lie" and such claim should be dismissed.

As for Craw's fourth cause of action, the district court said that it was "some sort of constitutional violation" claim and that "[b]ecause [Craw] has not set forth any facts as to what constitutional rights have been violated and in what manner by [the City]," his conclusory allegations were insufficient to state a plausible claim to relief "[e]ven with the more relaxed rules of notice pleading that Nebraska now utilizes . . . ."

The district court granted the City's motion to dismiss. Craw was given 14 days to file an amended complaint, and the court ordered that "[i]f no amended complaint is filed, then this case will be dismissed with prejudice without further hearing of the court."

On April 24, 2015, Craw filed an amended complaint against the City alleging the original four "cause[s] of action," but with some additional detail, and a fifth cause of action. The causes of action set forth in the amended complaint were as follows: (1) tort claim pursuant to the PSTCA, (2) constitutional inverse condemnation, (3) statutory inverse condemnation, (4) violation of the Due Process and Equal Protection Clauses of the state and federal Constitutions, and (5) violation of the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 et seq. (Reissue 2010 & Cum. Supp. 2016).

On May 4, 2015, the City filed a motion to dismiss Craw's amended complaint pursuant to § 6-1112(b)(1), regarding Craw's third cause of action, and § 6-1112(b)(6), regarding Craw's first, second, and fourth causes of action. The

City's motion to dismiss did not mention Craw's fifth cause of action.

In an order filed on October 20, 2015, the district court granted the City's motion to dismiss. The district court found that it lacked subject matter jurisdiction over Craw's third cause of action (statutory inverse condemnation claim pursuant to § 76-705) for the same reasons as stated in the court's April order, that being that such actions must be taken in county court.

Likewise, the court found that Craw's second and fourth causes of action failed to allege sufficient facts to state a plausible claim for relief, just as it had found in its April 2015 order. With respect to the second cause of action (constitutional inverse condemnation), the district court pointed to the reasons set forth in its April order, wherein the court found that "[a]s alleged, [Craw's] engagement as the Holmes Park Golf Course PGA Professional is not the type of vested property right for which [a constitutional] inverse condemnation claim would lie" and such claim should be dismissed. With respect to the fourth cause of action (violation of his rights under the state and federal Constitutions, specifically his rights to due process and equal protection), the district court found that Craw failed to allege any facts demonstrating that he had a protected property interest in his continued employment.

The district court went into a more detailed discussion regarding Craw's first and fifth causes of action. With regard to the first cause of action (tort claim pursuant to the PSTCA), the district court found the amended complaint lacked sufficient allegations to show that the claim was one in tort rather than contract. It said the primary well-pled factual allegation—that Craw's "'engagement'" as the Holmes Golf Course PGA Professional was terminated prior to the time it was to expire and/or be renewed—suggests a contract-based claim. The court found that Craw failed to allege sufficient facts to show that the City owed him a duty based in either contract

or tort and that therefore, Craw's first cause of action failed to state a claim for which relief may be granted.

With regard to Craw's fifth cause of action (Nebraska Wage Payment and Collection Act claim), the district court found that Craw had not alleged that he complied with the statutory prerequisites found in Neb. Rev. Stat. § 15-840 (Reissue 2012), which require a claimant to first present a written claim to the City before filing a claim under the Nebraska Wage Payment and Collection Act. The district court noted that if a claim presented to the City pursuant to § 15-840 is disallowed, then the claimant may appeal that determination to the district court. The court said: "[Craw] has not alleged compliance with the procedure set forth in . . . § 15-840. Rather, [Craw] has only alleged that he, through his attorney, submitted his claim to the City for damages under the PSTCA." The court concluded that Craw's fifth cause of action failed to state a claim upon which relief could be granted.

The district court granted the City's motion to dismiss and dismissed with prejudice Craw's amended complaint. Craw now appeals.

## ASSIGNMENTS OF ERROR

Craw assigns, summarized and restated, that the district court erred in determining that (1) it did not have subject matter jurisdiction over the statutory inverse condemnation claim, (2) he failed to state a claim upon which relief could be granted as to the other causes of action, (3) the amended complaint should be dismissed with prejudice, and (4) "allowing further amendment" of the complaint would be futile.

## STANDARD OF REVIEW

[1] An appellate court reviews a district court's order granting a motion to dismiss de novo, accepting all allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Jacob v. Nebraska Dept. of Corr. Servs.*, 294 Neb. 735, 884 N.W.2d 687 (2016).

ANALYSIS

[2] To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. *Tryon v. City of North Platte*, 295 Neb. 706, 890 N.W.2d 784 (2017). In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim. *Id*.

[3,4] Nebraska is a notice pleading jurisdiction. *Id*. Civil actions are controlled by a liberal pleading regime. *Id*. A party is only required to set forth a short and plain statement of the claim showing that the pleader is entitled to relief. *Id*. The party is not required to plead legal theories or cite appropriate statutes so long as the pleading gives fair notice of the claims asserted. *Id*. Stated another way, fair notice that a claim exists, not the authorizing statute or legal theory, is all that is required to carry a valid claim at the pleading stage. *Id*. The rationale for this liberal notice pleading standard is that when a party has a valid claim, he or she should recover on it regardless of a failure to perceive the true basis of the claim at the pleading stage. *Id*.

In his amended complaint, Craw alleged that "[b]y definition" he was an "employee of the City," but had been "misclassified as an independent contractor and was wrongfully terminated from his position as the PGA Professional for the Holmes Golf Course, the last engagement for which was to expire and/or be ready for renewal on April 30, 2012." He alleged that his "last day at the Holmes Golf course, as [a] professional, was October 30, 2011." He also mentioned some wrongdoing that occurred during his "employment." In his brief, he stated: "Reduced to essentials, Craw complains against the City for the manner in which his engagement as the PGA Professional at Holmes was established, managed and terminated, by the

City, especially in 2011, but prior to that time as well." Brief for appellant at 25. It is from these allegations that Craw's "successive causes of action, all of which are pleaded in the alternative," arise. *Id.* at 20.

*First Cause of Action—*
*Tort or Contract?*

In his amended complaint, Craw set forth several allegations under the heading "First Cause of Action." Among the allegations were that he had submitted to the City, through its city clerk, his claim for damages under the PSTCA, and the City denied his claim; he was "[b]y definition" an "employee of the City" (and he set forth more specific factual allegations as to why he was an "employee"); during the course of his work and employment with the City, he was "misclassified as an independent contractor and was wrongfully terminated from his position as the PGA Professional for the Holmes Golf Course, the last engagement for which was to expire and/or be ready for renewal on April 30, 2012," and his last day as a professional was October 30, 2011. He further alleged that "[w]hile the basic relationship may exist as an agreement or contract, certain of the parties' obligations toward the other sound in, and are based upon the principles of negligence, which is to say the law of torts is involved." After setting forth the general duties of an employer to an employee, he alleged that "[i]n particular, the City had a duty with regard to Craw, to see to it that he [was] properly categorized as [a] City employee[], and a further duty of fair treatment." He alleged that the City failed to meet its duties and that as a "direct and proximate result," Craw suffered and incurred various damages, including past and future physical pain, mental suffering, and emotional distress; inconvenience in the past and future; damage to property; and loss of use of property.

The district court found that Craw's amended complaint lacked sufficient allegations to show that the claim was one in tort rather than contract. It said:

The primary well-pled factual allegation in the Amended
Complaint is that [Craw's] "engagement" as the Holmes
Golf Course PGA Professional was terminated prior to
the time it was set to expire and/or be renewed. [Craw's]
use of the term "engagement" . . . suggests a contract-
based claim. While [Craw] alleges that the City owed him
a duty to properly categorize him as an employee, the
nature of this duty must be considered in light of the fact
that [Craw's] position with the City was the subject of an
"engagement" that could expire or be renewed. Without
any factual allegations regarding the nature of [Craw's]
"engagement" with the City, the court cannot determine
whether any alleged duty on the part of the City to prop-
erly categorize [Craw] as an employee was encompassed
within the terms of [Craw's] "engagement."

The court found that Craw failed to allege sufficient facts to
show that the City owed him a duty based in either contract
or tort and that therefore, Craw's first cause of action failed to
state a claim for which relief may be granted.

In his brief, Craw argues that "[t]he Amended Complaint
gives [the City] 'fair notice of what the . . . claim is and the
grounds upon which it rests.'" Brief for appellant at 26. The
City argues: "It is clear that [Craw's] 'allegations' cannot be
characterized as anything other than assertions, conclusions,
and threadbare recitals. They are form, but no substance." Brief
for appellees at 13. The City further argues that "[e]ven accept-
ing any well pled allegations as true, it is quite evident that
[Craw] is not setting forth a cause of action based in tort, but
rather a cause of action based in contract." *Id*. at 14.

In his brief, Craw stated that his first cause of action was a
tort claim. He alleged that he filed a claim with the City via
the PSTCA and that the City denied his claim. After setting
forth the general duties of an employer to an employee, he
alleged that "[i]n particular, the City had a duty with regard to
Craw, to see to it that he [was] properly categorized as [a] City
employee[], and a further duty of fair treatment." He alleged

that the City failed to meet its duties, and that as a "direct and proximate result," he was damaged. He asked for damages including physical and mental suffering, which are tort-related damages outside of contracted wage amounts.

[5] However, § 13-903(4) defines a "[t]ort claim" under the PSTCA as "any claim against a political subdivision for money only on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee." Clearly, there has been no personal injury or death in the present matter. Therefore, Craw's alleged "loss" of employment would have to qualify as a "loss of property" under the PSTCA. This court declines to construe the statute in such a manner, particularly where the allegations in this case rest on an "engagement" between the parties sounding in contract, as the district court likewise concluded. See *Employers Reins. Corp. v. Santee Pub. Sch. Dist. No. C-5*, 231 Neb. 744, 438 N.W.2d 124 (1989) (claim based on breach of contract is not tort claim under PSTCA). Even Craw admitted that "the basic relationship may exist as an agreement or contract." His allegations that others may have negligently influenced that agreement does not convert his contract claim into a tort claim, other than perhaps to claim a tortious interference with his contract rights. However, to the extent Craw claims his rights under the terms of "engagement" were affected by negligent or wrongful acts of any employees, the PSTCA specifically excludes claims arising out of any "interference with contract rights." See § 13-910(7).

Accordingly, we agree with the district court that Craw's first cause of action failed to state a claim upon which relief could be granted.

*Second and Third Causes of Action—*
*Inverse Condemnation.*

[6] In his second and third causes of action, Craw makes inverse condemnation claims. More specifically, in his second

cause of action, Craw alleged that the City "damaged the property or property rights owned by [him]" and "deprived [him] the use of his property," thus entitling him to compensation under Neb. Const. art. I, § 21. Neb. Const. art. I, § 21, provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." In his third cause of action, Craw alleged that pursuant to § 76-705, he is entitled to "recovery of his property damage . . . as the City . . . damaged the property of Craw, for public use, without instituting condemnation proceedings." Section 76-705 provides:

> If any condemner shall have taken or damaged property for public use without instituting condemnation proceedings, the condemnee, in addition to any other available remedy, may file a petition with the county judge of the county where the property or some part thereof is situated to have the damages ascertained and determined.

Based on the allegations set forth in his amended complaint, the only "property" Craw could be referring to is his job at Holmes Golf Course. However, that is not the type of "property" for which inverse condemnation claims can be brought.

As stated by the Nebraska Supreme Court, "[I]nverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings." *Henderson v. City of Columbus*, 285 Neb. 482, 488, 827 N.W.2d 486, 491-92 (2013). While most inverse condemnation claims involve the taking of land, we have found cases addressing the "taking" of a job, but those claims were not successful.

In *Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098 (7th Cir. 1995), one of the issues addressed was whether a principal's property (statutory tenure) was taken without just compensation in violation of the Fifth Amendment to the U.S. Constitution, which provides in relevant part: "[N]or shall

private property be taken for public use, without just compensation." The Seventh Circuit said:

> Job tenure is for some purposes "property" within the meaning of the Constitution, and the principals' tenure has been "taken." But there is a missing link in the principals' alternative argument that this taking violates the takings clause. Job tenure is property within the meaning of the due process clauses . . . which protect people against deprivations of life, liberty, or property without due process of law. . . .
>
>    . . . But "property" as used in [the takings] clause is defined much more narrowly than in the due process clauses. It encompasses real property and personal property, including intellectual property. . . . But in this circuit anyway, though the Supreme Court left the issue open in *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 224, 106 S.Ct. 1018, 1025, 89 L.Ed.2d 166 (1986) [regarding retroactive application of the withdrawal liability provisions of the Multiemployer Pension Plan Amendments], it does not extend to contracts . . . or to statutory entitlements.

*Pittman v. Chicago Bd. of Educ.*, 64 F.3d at 1104.

In *Leach v. Texas Tech University*, 335 S.W.3d 386 (Tex. App. 2011), a former football coach brought an action against the university and university officials for breach of contract, violation of the whistleblower statute, and violation of the takings clause. The district court dismissed all claims except the breach of contract claim. On appeal, the Texas Court of Appeals held in relevant part that the coach failed to state a takings claim. The claims in question "involve[d] the purported taking without compensation of [the coach's] property and his termination without due process." *Id*. at 398. The takings clause of Texas Const. art. I, § 17, states in relevant part that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." (This

portion of the Texas Constitution is similar to the takings clause in the Nebraska Constitution and the statutory language in § 76-705.) The Texas Court of Appeals stated that the elements of a takings claim are not satisfied when the State withholds property in a contractual dispute.

> This is apparently so because the party demanding compensation after performing his contractual duty to provide goods or services actually provided those goods or services voluntarily as opposed to being forced to do so via the State's power of eminent domain. . . . So, when the State withholds property under color of a contractual right, such as when it believes the contract was not properly performed, it is not acting as a sovereign invoking powers of eminent domain, but rather as a private party to a contract invoking rights expressed or implicit in the contract. . . . Thus, the takings clause appearing under Texas Constitution art. I, § 17 does not apply to contractual disputes.

*Leach v. Texas Tech University*, 335 S.W.3d at 398. The Texas Court of Appeals stated that the compensation sought by and allegedly due the coach is that which the university contracted to pay him in return for his performance of services as the coach, and the university purported to withhold compensation because the coach failed to abide by the terms of their agreement. The court held that "what we have here is nothing other than a contractual dispute . . . which falls outside the takings clause." *Id.*

In *Tracy v. City of Deshler*, 253 Neb. 170, 171, 568 N.W.2d 903, 905 (1997), the owner of a garbage collection business brought an action under Neb. Const. art. I, § 21, seeking compensation for the alleged unconstitutional "'taking'" of his business by the City of Deshler. In January 1992, the owner was granted a permit by the city to haul garbage "'for the year ending July 1, 1992,'" pursuant to the city's municipal codes. *Tracy v. City of Deshler*, 253 Neb. at 171, 568 N.W.2d at 905. One such code provided that if the city entered into

a contract for the citywide collection of garbage, all permits previously issued to private garbage collectors, including the permit issued to the owner, would expire immediately. The city subsequently entered into a contract for citywide garbage collection with one of the owner's competitors. As a result, the owner lost all of his garbage collection customers in the city. The owner filed an action against the city, seeking compensation for the loss of his garbage collection business, arguing that the loss of his business was a "taking" of property entitling him to compensation. *Id.* The Nebraska Supreme Court determined that the owner was engaged in a business that was subject to a conditional permit and that thus, he did not have a reasonable expectation of a continuing right to haul garbage in the city for the purposes of a takings claim. The court held that "payment of just compensation pursuant to Neb. Const. art. I, § 21, applies only to vested property rights, and a permit with the type of restrictive conditions imposed by [city ordinance] did not constitute a vested property right in any constitutional sense." *Tracy v. City of Deshler*, 253 Neb. at 176, 568 N.W.2d at 908.

Finally, in *Johnston v. Panhandle Co-op Assn.*, 225 Neb. 732, 743-44, 408 N.W.2d 261, 269 (1987), although in the context of due process rather than a takings claim, the Nebraska Supreme Court held that "[t]o have a property interest in employment, a person must have a legitimate claim of entitlement to it" and that "an employee at will . . . ha[s] no reasonable expectation of continued employment or legitimate claim of entitlement to it."

Craw claims to have been an "employee" of the City. If that is true, his employment appears to have been as a contract employee based on the fact that the "last engagement . . . was to expire and/or be ready for renewal on April 30, 2012." However, we note that at one point in his amended complaint, Craw alleged that he was a "statutory employee." Under either scenario, any claim Craw has regarding his employment or termination thereof falls outside of the takings clause. See,

*Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098 (7th Cir. 1995); *Leach v. Texas Tech University*, 335 S.W.3d 386 (Tex. App. 2011). Because inverse condemnation does not apply to Craw's case, the district court properly dismissed with prejudice his second and third causes of action and we need not address any jurisdictional issues with regard to his inverse condemnation claims. See *Adair Asset Mgmt. v. Terry's Legacy*, 293 Neb. 32, 875 N.W.2d 421 (2016) (appellate court not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

*Fourth Cause of Action—Due Process and Equal Protection.*

In his fourth cause of action in his amended complaint, Craw alleged violations of his constitutional rights to due process and equal protection. Craw incorporated all preceding paragraphs of his amended complaint into his fourth cause of action; among those paragraphs was an allegation that "his employment was public employment." He then claimed:

[T]he foregoing constitute violations of the rights guaranteed to him by the Nebraska and United States[] Constitutions, by the statutes of the State of Nebraska and of the United States of America, all as regards civil rights and/or discrimination. In particular, Craw claims, (a) that his misclassification as an independent contractor, rather than a statutory employee, violated the due process clauses of both the Nebraska and United States Constitutions, as matters both of substance and procedure; (b) that the manner in which his employment and/or position was terminated or eliminated further violated the due process clauses of both the Nebraska and United States Constitutions, at least as a matter of procedure; and, (c) that both the misclassification and termination or job elimination violated the equal protection clauses of both the Nebraska and United States Constitutions, in that his treatment was, without cause, different and less

favorable than other City employees or their comparable persons, who were similarly situated.

See, U.S. Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws"); Neb. Const. art. I, § 3 ("[n]o person shall be deprived of life, liberty, or property, without due process of law, nor be denied equal protection of the laws").

In its order, the district court found that Craw's fourth cause of action failed to allege sufficient facts to state a plausible claim for relief. Additionally, the court found that Craw failed to allege any facts demonstrating that he had a protected property interest in his continued employment. In support of its finding, the district court cited to *Hickey v. Civil Serv. Comm. of Douglas Cty.*, 274 Neb. 554, 741 N.W.2d 649 (2007) (constitutional due process protections apply when public employer deprives employee of property interest in continued employment).

[7] A public employee's due process rights arise from a contractually created property right to continued employment. *Scott v. County of Richardson*, 280 Neb. 694, 789 N.W.2d 44 (2010). A public employee with a property interest in his employment has the right to due process of law, which requires that the employee be provided with oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to explain his or her side of the story. *Id.*

The City claims that Craw "has provided no factual allegations with respect to the nature of his 'engagement' and without such factual allegations he has not sufficiently stated a plausible claim for relief that he was a public employee and therefore entitled to the protections of the Due Process clause" prior to his termination. Brief for appellees at 18.

Craw's failure to set forth the specific nature of the "engagement" does not necessarily defeat Craw's claim, at least for the purpose of surviving a motion to dismiss. See *Tryon v. City of North Platte*, 295 Neb. 706, 713, 890 N.W.2d 784, 789 (2017) ("[w]hile setting out the appropriate statute and the

allegations regarding each element required therein would have been helpful to appellees and the court, appellants' failure to do so does not defeat the presence of valid claims"). In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim. *Id*. The nature of Craw's engagement would certainly be discoverable at a later date. After the nature of his engagement and his employment classification is determined, then the issue of whether he was a public employee with a property interest in his job can be addressed.

We note that the district court did not specifically address Craw's equal protection claim in its order. The City's brief on appeal also ignores the issue. In Craw's brief, he argues that "[t]he Amended Complaint gives [the City] 'fair notice of what the . . . claim is and the grounds upon which it rests.'" Brief for appellant at 26. Although his amended complaint did not allege specific facts as to how "his treatment was, without cause, different and less favorable than other City employees or their comparable persons, who were similarly situated," there is a reasonable expectation that discovery will reveal evidence of the claim. See *Tryon, supra*.

While Craw's ability to successfully litigate a suit for due process and equal protection violations is yet to be determined, we find that he has provided fair notice of his claims, which is all that is required at the pleading stage. See *id.* Accordingly, the district court erred in finding that Craw's fourth cause of action failed to state a claim upon which relief could be granted.

*Fifth Cause of Action—Nebraska Wage
Payment and Collection Act.*

In his fifth cause of action in his amended complaint, Craw alleged violations of the Nebraska Wage Payment

and Collection Act, § 48-1228 et seq. The Nebraska Wage Payment and Collection Act provides in relevant part that "[a]n employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court." § 48-1231(1). Both "[e]mployee" and "[w]ages" are statutorily defined. § 48-1229. In particular, Craw claims that "his misclassification by the City resulted in a substantial underpayment by the City of compensation to him and to others working at the golf course, both as to primary compensation and as to other benefits of City employment, all in such amount as is proven at trial."

The City's motion to dismiss did not mention Craw's fifth cause of action. However, the district court found that Craw's fifth cause of action failed to state a claim upon which relief could be granted because Craw failed to allege facts showing that he complied with the statutory prerequisites to bring such a claim. Specifically, the district court found that Craw had not alleged compliance with the procedure set forth in § 15-840 for filing a contract claim against a city of the primary class, like the City herein.

Section 15-840 provides:

All liquidated and unliquidated claims and accounts payable against the city shall: (1) Be presented in writing; (2) state the name of the claimant and the amount of the claim; and (3) fully and accurately identify the items or services for which payment is claimed or the time, place, nature, and circumstances giving rise to the claim. The finance director shall be responsible for the preauditing and approval of all claims and accounts payable, and no warrant in payment of any claim or account payable shall be drawn or paid without such approval. *In order to maintain an action for a claim, other than a tort claim as defined in section 13-903, it shall be necessary, as a condition precedent, that the claimant file such claim within one year of the accrual thereof, in the office of the city*

*clerk, or other official whose duty it is to maintain the official records of a primary-class city.*
(Emphasis supplied.) And Neb. Rev. Stat. § 15-841 (Reissue 2012) allows for an appeal to the district court after disallowance of a claim under § 15-840. Furthermore, in an action against a city of the primary class, an application of the Nebraska Wage Payment and Collection Act would not alter the need to satisfy the prerequisites of the claims statutes contained in §§ 15-840 and 15-841. See, *Rauscher v. City of Lincoln*, 269 Neb. 267, 691 N.W.2d 844 (2005); *Thompson v. City of Omaha*, 235 Neb. 346, 455 N.W.2d 538 (1990).

The district court determined that Craw's fifth cause of action under the Nebraska Wage and Payment Collection Act failed to state a plausible claim for relief, because Craw had not alleged compliance with the prerequisites for bringing such a claim, and the district court dismissed the claim with prejudice. We find the dismissal with prejudice was error, because Craw should have been provided an opportunity to amend his pleading to cure this defect, to the extent he can do so.

[8] We note that Craw contends that he did file a timely claim with the City and that the amended complaint "alleges Craw's claim was timely filed under the tort claim statutes, Neb. Rev. Stat. §§ 13-901 *et seq.*" Reply brief for appellant at 6. But contrary to Craw's assertion, a timely filing of a tort claim with the City under the PSTCA, § 13-901 et seq., is not sufficient to satisfy the filing requirements of § 15-840 for purposes of the application of the Nebraska Wage Payment and Collection Act, because the two underlying claims are separate and distinct. For purposes of the PSTCA, a "[t]ort claim shall mean any claim against a political subdivision for money only on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the political subdivision . . . ." § 13-903. The Nebraska Wage Payment and Collection Act allows an employee to file a claim for

unpaid wages. See, also, *Andrews v. City of Lincoln*, 224 Neb. 748, 751, 401 N.W.2d 467, 469 (1987) (§ 15-840 "prescribes a procedural prerequisite concerning contract claims, liquidated or unliquidated, against a city of the primary class"). Accordingly, a claim for one is not a claim for the other. To the extent that Craw may have filed a notice of his claim for unpaid wages with the City, apart from his tort claim, he should at least have an opportunity to amend his complaint to show such compliance.

To the extent Craw is able to plead procedural compliance with § 15-840, as discussed above, we address the City's additional argument that Craw "provided no facts to establish that he was an employee within the meaning of the Wage Payment and Collection Act." Brief for appellees at 19. For purposes of the Nebraska Wage Payment and Collection Act, an

[e]mployee means any individual permitted to work by an employer pursuant to an employment relationship or who has contracted to sell the goods or services of an employer and to be compensated by commission. Services performed by an individual for an employer shall be deemed to be employment, unless it is shown that (a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his or her contract of service and in fact, (b) such service is either outside the usual course of business for which such service is performed or such service is performed outside of all the places of business of the enterprise for which such service is performed, and (c) such individual is customarily engaged in an independently established trade, occupation, profession, or business.

§ 48-1229. In his amended complaint, Craw alleged that he was "[b]y definition" an "employee of the City," and he set forth more specific factual allegations as to why he was an "employee." Among those allegations, he claimed that the City, at all times, "maintained and exercised extensive control" over

Craw; the City "intended Craw's employment to be long-term at the time he was first hired"; and a "significant majority" of Craw's responsibilities were mid-managerial and "he was allowed to exercise little, if any, independent judgment." He further alleges that his "misclassification" by the City resulted in a substantial underpayment of compensation to him. While the nature of Craw's relationship with the City and his ability to successfully litigate a suit for unpaid wages under the Nebraska Wage Payment and Collection Act are yet to be determined, the allegations as to his "employee" status are sufficient for purposes of pleading. But as previously discussed, this is only relevant so long as there has been proper procedural compliance.

## CONCLUSION

For the reasons stated above, we find that the district court properly dismissed with prejudice Craw's first cause of action for an alleged tort claim under the PSTCA and Craw's second and third causes of action for inverse condemnation; we affirm those portions of the district court's order. However, we find that the district court erred in dismissing Craw's fourth cause of action (due process and equal protection) because Craw provided fair notice of that claim, which is all that is required at the pleading stage. We reverse the dismissal with prejudice of Craw's fifth cause of action (Nebraska Wage Payment and Collection Act) only insofar as Craw was not provided an opportunity to amend his pleading to address the procedural prerequisites noted by the district court's order; we otherwise affirm the district court's determination as to those procedural prerequisites. Accordingly, we reverse the district court's dismissal of Craw's fourth and fifth causes of action and remand the matter for further proceedings.

Affirmed in part, and in part reversed and remanded for further proceedings.